## UNITED STATES *v.* GUNNING and others.

*(Circuit Court, S. D. New York.   November, 1883.)*

1. PATENTS FOR INVENTIONS—WHEN OBTAINED THROUGH FRAUD—RIGHT OF GOVERNMENT TO VACATE.

   There is no distinction between letters patent for an invention and for land, as regards the rights and remedies for vacating them, when obtained by fraud. The right is the same as that which a state has to annul the charter of a corporation created by its legislature if obtained by fraud.

2. SAME—PROPER REMEDY.

   The appropriate remedy in behalf of the United States, when a patent for an invention has been obtained by fraud, is by a bill in equity.

In Equity.

*Chas. W. Seymour,* for Gunning.   *A. J. Todd,* of counsel.

*Louis C. Raegener,* Special Asst. Atty., for the United States.

WALLACE, J.   This bill is filed to vacate letters patent for an invention granted to the defendants, September 26, 1882, upon the ground of fraud and false suggestion, the allegations being that the applicant induced the grant by his statements in his application that he believed himself to be the inventor of the patented subject, and did not know or believe it had been in public use or on sale in the United States for more than two years prior to his application, whereas both of these statements were false to his knowledge. The defendants have demurred, and in support of the demurrer urge that the United States cannot maintain a suit in equity to vacate letters patent for an invention, although the grant was obtained by fraud. It is insisted in

their behalf that there is no statutory provision which permits such a suit, and in the absence of statutory authority no such suit can be maintained.

Notwithstanding the expression of opinion of Judge SHEPLEY in *Atty. Gen.* v. *Rumford Chemical Works*, 2 Bann. & A. 298, in favor of the defendants' position, it is believed there is no sound reason why a bill will not lie in such a case as well as where the subject of the grant is land, or is a franchise or right of a different kind. The learned judge laid much stress upon the consideration that in issuing letters patent for inventions, nothing is granted which belonged before to the United States, and the rights and remedies of the parties to such grants are dependent solely on the statute enactments, and do not grow out of any previous ownership of the subject of the grant; and it was his view that in such a case express authority for proceedings to annul the grant must be conferred, in order to sanction them. The same reasoning would preclude a state from proceedings to annul the charter of a corporation created by its legislature if obtained through fraud. Yet it is a familiar principle that grants of corporate franchises obtained through fraud practiced upon the legislature are void when the state elects to set them aside by a judicial rescission. Mor. Priv. Corp. 148. He also refers to the provisions of the patent acts of 1790 and 1793, which authorized proceedings for the repeal of patents obtained surreptitiously or by false suggestion, as indicating that congress deemed it necessary that authority for proceedings to repeal letters patent obtained through fraud should be conferred by statute. These provisions, however, permitted such proceedings to be taken by any person who chose to complain,—a right which did not and does not exist unless expressly conferred. A bill in equity lies to set aside letters patent obtained by fraud, but only between the sovereignty making the grant and the grantee. *Field* v. *Seabury*, 19 How. 323. No inference can be justly drawn, therefore, from these provisions that congress deemed it requisite to confer express authority upon the United States to maintain such a suit, nor from the absence of such provisions in the existing laws that congress intended to withhold such authority.

In *Mowry* v. *Whitney*, 14 Wall. 434, Mr. Justice MILLER, in delivering the opinion of the court, assumed without question that there is no distinction between letters patent for an invention and for land, as regards the rights and remedies for vacating them when obtained by fraud, and that a bill in equity is an appropriate remedy in behalf of the United States when a patent for an invention has been obtained by fraud. Although the precise point decided was that the owner of a conflicting patent could not maintain a suit in his own name to vacate an interfering patent obtained fraudulently, that conclusion was influenced mainly by the consideration that the government was the appropriate party to assert the remedy and seek the relief.

The demurrer is overruled.